UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David A. Newman

   v.                                        Civil No. 17-cv-455-LM
                                                 Opinion No. 2018 DNH 097
Nancy A. Berryhill, Acting
Commissioner of Social Security

**O R D E R**

David A. Newman seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits.  Newman moves to reverse the Acting Commissioner's decision, contending that the decision of the Administrative Law Judge ("ALJ")—specifically, the residual functional capacity assessment—is not supported by substantial evidence.  The Acting Commissioner moves to affirm.  For the following reasons, the Acting Commissioner's decision is affirmed.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether he has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite his limitations caused by impairments, id. § 404.1545(a)(1), and his past relevant work, id.

§ 404.1520(a)(4)(iv)).  If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled.  See id.  If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment.  See id. § 404.1520(a)(4)(v).

**BACKGROUND**[1]

On August 17, 2016, Newman applied for disability insurance benefits, claiming a disability that began on February 21, 2015.[2] He was 54 years old at the time of his application, had a high school education, and had previously worked as a photocopy machine operator and security officer.  Newman alleged that he was disabled as a result of right upper extremity dysfunction, chronic back pain following fusion surgery, right lower extremity arthritis, depression, post-traumatic stress disorder ("PTSD"), panic disorder, anxiety disorder, and bilateral upper extremity tremors.  Newman's application was initially denied, and he sought review before an ALJ.

---

[1] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 9).

[2] This is Newman's second application for such benefits.  An ALJ previously denied his first application for disability insurance benefits in a decision dated February 20, 2015.

3

I.   Hearing Evidence[3]

On May 16, 2017, a hearing before an ALJ was held.  Newman was represented by an attorney and testified at the hearing. Jack Bopp, a vocational expert, appeared and testified by phone.

Regarding functional limitations, there is evidence in the record to support the position that Newman's anxiety and depression impeded his abilities to concentrate, interact with others socially, and be out in public.  For example, in June 2016, Newman reported to Tara Fraser, Physician's Assistant and Newman's primary care provider, that he was anxious in crowds and afraid to leave his house.  Newman reported that, as a result of his anxiety, crowds overwhelmed him, and he limited the extent to which he went out in public.  At the hearing, Newman also testified that on one occasion, when he went to a concert and forgot to take his anxiety medication, he had a panic attack as he entered the venue.

This view of Newman's anxiety as functionally debilitating is supported by the consultative psychological examination performed by Robert Prescott, Ph. D, in November 2016.  Dr. Prescott examined Newman, spoke with him about his mental health, and reviewed some medical records.  Dr. Prescott

---

[3] Newman does not challenge the ALJ's RFC assessment as it relates to his physical capabilities, so the court limits its recitation of the relevant facts accordingly.

concluded that Newman could not be expected to maintain concentration for extended periods, manage typical levels of stress "found in settings outside the home," or "interact effectively . . . with others on the job." Admin. Rec. at 480.

On the other hand, there is evidence in the record showing that Newman could effectively control his anxiety through medication. Newman reported as much to Fraser, stating that he could attend concerts, visit museums, and do "more day to day activities" with the help of his anxiety medication. Admin. Rec. at 395. At the hearing, Newman testified that he took the medication before leaving his house, going to the grocery store, or going to Walmart. When he attended a concert, however, he would need to double the dosage.

State agency psychologist Patricia Salt, Ph. D., provided an assessment consistent with this latter set of evidence. She reviewed Dr. Prescott's opinion and the records from Newman's primary care provider. Dr. Salt concluded that Newman could maintain attention and concentrate for extended periods of time, could "get along adequately with those he interacts with," and could appropriately respond to criticism, though she also noted that Newman may be "distracted by the presence of others in his workspace . . . if there are groups of people around him." Admin. Rec. at 87.

5

II. ALJ's Decision

The ALJ issued his decision on June 7, 2017. As is relevant here, the ALJ found that Newman had two severe mental impairments, depression and anxiety, but that they did not meet any listed impairments. Turning to Newman's RFC, the ALJ concluded that Newman could perform a limited range of light work, which included nonexertional limitations that Newman could only perform "simple, routine tasks," and have no more than "frequent interaction with coworkers and the general public." Admin. Rec. at 27; see also Dussault v. Colvin, No. 15-cv-441-JL, 2017 WL 633352, at *3 (D.N.H. Feb. 16, 2017) (noting that "frequent" activity "occurs between one-third and two-thirds of the time"). The ALJ rejected the claim that Newman's mental impairments significantly undermined his ability to perform work or be outside of the home. The ALJ relied on the evidence showing that, with medication, Newman was able to manage his anxiety while in public. The ALJ gave "great weight" to Dr. Salt's opinion in determining Newman's RFC, finding, among other things, that it was consistent with Newman's "longitudinal medical record." Admin. Rec. at 31.

Based on this assessment and the testimony of the vocational expert, the ALJ determined that Newman could perform his past relevant work as a photocopy machine operator.

Therefore, the ALJ found that Newman was not disabled within the meaning of the Social Security Act. The Appeals Council denied Newman's request for review, making the ALJ's decision the Acting Commissioner's final decision.

**DISCUSSION**

Newman argues that the ALJ's RFC assessment, as it pertains to his mental impairments, is not supported by substantial evidence. He raises the following errors: (1) the ALJ's finding that medication alleviated Newman's anxiety is inconsistent with his hearing testimony; (2) the ALJ incorrectly stated that Newman did not attend counseling; (3) the ALJ erred in relying on Dr. Salt's opinion, because Dr. Salt failed to review Newman's counseling notes;[4] (4) the ALJ's reason for rejecting Dr. Prescott's opinion is erroneous; and (5) the ALJ failed to note in the decision that Newman "broke down in tears due to stress" after the administrative hearing, doc. no. 6-1 at 4. The court discusses each argument in turn.

I. Anxiety Medication

The ALJ found that the symptoms caused by Newman's anxiety, including his abilities to interact with others and be out in

---

[4] In his brief, Newman makes this argument with respect to Dr. Trice, but context makes clear that he is actually referring to Dr. Salt. See doc. no. 6-1 at 3.

7

public, could be largely controlled through medication. Newman argues that this finding is inconsistent with his hearing testimony that "he frequently had to double up on his anxiety medication dosage and that it had a sedating effect and that on occasion when he forgot his prescription he would self-medicate with alcohol." Id.

The court is not persuaded. As an initial matter, Newman's characterization of his testimony is not consistent with the transcript. Rather, Newman testified that he doubled his dosage of medication when he attended concerts, which he did "occasionally." Admin. Rec. at 65. And he stated that at one concert, he forgot his medication and had a glass of scotch to calm down. Id. at 65-66. These isolated incidents are not materially inconsistent with the medical records, which indicate that through medication, Newman was generally able to control his anxiety while in public.

Even if they were inconsistent, it was for the ALJ to resolve such conflicts. See Proulx v. Astrue, No. 11-cv-496-PB, 2012 WL 4829303, at *4 (D.N.H. Oct. 11, 2012) ("It is the role of the ALJ, not the court, to resolve conflicts in the evidence."). Given Newman's own reports to Fraser about the efficacy of his medication, as well as his acknowledged ability

to engage in a variety of activities in public, the ALJ's finding has substantial support in the record. See id.

II. Misstatement Regarding Counseling

Newman next contends, and the Acting Commissioner concedes, that the ALJ incorrectly stated in the decision that Newman did not receive counseling for his mental impairments. In fact, as both medical records and Newman's testimony at the hearing establish, Newman received behavioral-health counseling from a social worker intermittently in 2014 and 2016.

A brief explanation of this counseling will be helpful to provide context. Between March and April of 2014, and again between September and October of 2016, Newman attended counseling sessions for his anxiety, depression, and alleged PTSD. The records documenting these sessions shed more light on the specific triggering events for Newman's anxiety and PTSD, the severity of his anxiety and depression, and the ways in which, absent medication, these mental impairments affect and impair his abilities to interact with others and be out in public.

The question is whether the ALJ's error justifies remand. The court concludes that it does not. A mischaracterization or misstatement of the evidence does not necessarily compel remand. See, e.g., Musto v. Halter, 135 F. Supp. 2d 220, 228 (D. Mass.

2001) (collecting cases for proposition that "minor discrepancies" between record and facts as characterized by ALJ will not always warrant remand). Courts examine the effect of the error and determine whether the ALJ's decision remains supported by substantial evidence. See, e.g., Perez Torres v. Sec'y of Health & Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989); Floyd v. Berryhill, No. 15-cv-456-PB, 2017 WL 2670732, at *5 (D.N.H. June 21, 2017); Musto, 135 F. Supp. 2d at 228. Similarly, an ALJ's failure to address certain evidence will not "undermine the validity of her conclusion" where "that conclusion was supported by citations to substantial medical evidence in the record and the unaddressed evidence was either cumulative of the evidence discussed by the ALJ or otherwise failed to support the claimant's position." Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).

Here, the court concludes that the ALJ's error does not justify remand. Indeed, besides identifying the error, Newman does not explain how the counseling notes undermine the ALJ's decision. The counseling notes further substantiate the fact that Newman has significant anxiety, and they reveal the extent to which his mental impairments can impact his functioning. But such information is merely cumulative of the other evidence that

established the nature and extent of Newman's mental impairments and the symptoms resulting therefrom.

More to the point, the court fails to see how such information casts doubt on the ALJ's determination. The ALJ based his RFC assessment not on a finding that Newman did not have severe mental impairments, but on the finding that any functional limitations resulting from such impairments were adequately controlled by medication. The counseling notes do not concern the efficacy of Newman's medication and therefore do not undermine the basis for the ALJ's conclusion. Thus, remand on that basis is not warranted. See Ward v. Comm'r of Social Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise.").

III. Dr. Salt's Opinion

Newman next argues that the ALJ erred when he afforded greatest weight to the opinion of Dr. Salt, because Dr. Salt did not review the above-described counseling notes. While Newman may be correct, the court does not consider it reversible error.

"[T]he fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Brown v. Colvin, No. 14-cv-256-JL, 2015 WL 4416971, at *3

11

(D.N.H. July 17, 2015). Such reliance may nevertheless be reasonable if the unconsidered evidence does not establish greater limitations, or if it is consistent with the medical opinion. See id. (discussing in context of opinion that failed to account for later medical records).

Here, Dr. Salt reviewed the medical records in which Newman reported that his anxiety medication alleviated his symptoms, and she concluded that Newman's mental impairments did not significantly limit his ability to work, interact with others, or be in public. The counseling notes—which, as noted, do not concern the efficacy Newman's medication—are not inconsistent with Dr. Salt's reasoning or opinion.

More generally, it is for the ALJ to resolve conflicts between conflicting medical opinions, and in this case the ALJ's resolution finds "substantial support in the record." Larocque v. Colvin, No. 14-cv-230-JL, 2015 WL 2342868, at *2 (D.N.H. May 14, 2015). The ALJ relied on Dr. Salt's opinion not only because it was consistent with the longitudinal medical record, but because of her expertise as a licensed psychologist and her knowledge of the disability program and its requirements. These were proper factors to consider. See 20 C.F.R. § 404.1527(c)(4)-(6) (stating that ALJ may give medical opinion more weight if it is made by a specialist, if it is consistent

with the record as a whole, or if the medical source understands "our disability programs and their evidentiary requirements").

Accordingly, Newman's argument does not warrant reversal or remand.

IV. Dr. Prescott's Opinion

Newman contends that the ALJ erred when he give little weight to Dr. Prescott's opinions that Newman could not effectively work outside the home or interact with others as a result of his mental impairments. The ALJ discounted these opinions because "treating provider Ms. Fraser noted controlled anxiety when the claimant took medication for anxiety as prescribed." Admin. Rec. at 31. Newman considers the ALJ's reasoning erroneous because, elsewhere in his decision, the ALJ rejected Fraser's RFC opinions on the ground that Fraser was "not an acceptable medical source." Id. The court disagrees.

In the first place, the ALJ was correct in stating that Fraser, as a Physician's Assistant, was not an acceptable medical source. See Smith v. Berryhill, No. 16-cv-567-JHR, 2018 WL 1474528, at *5 (D. Me. Mar. 26, 2018). But the ALJ did not then rely on a "medical opinion" of Fraser to reject Dr. Prescott's opinion. Rather, the ALJ rejected Dr. Prescott's opinions because they were inconsistent with Newman's own reports to Fraser, which Fraser merely recorded in her treatment

13

notes.  See 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s)" (emphasis added)).  Thus, there was no inconsistency between the ALJ's observation that Fraser was not an acceptable medical source and his reliance on Fraser's treatment notes to discount some of Dr. Prescott's opinions.

V.   Post-Hearing Conduct

Newman's final argument is that the ALJ failed to note in his decision that, at the close of the hearing, Newman "broke down in tears due to the stress of testifying."  Doc. no. 6-1 at 4.  Newman has not shown that he is entitled to relief on this basis.  As the Acting Commissioner notes, there does not appear to be any evidence in the record about this incident.  Thus, absent further developed argument from Newman, the court discerns no reason why it should consider this alleged incident, or indeed, why the ALJ should have considered it.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 143 (1st Cir. 1987) ("In the ordinary course, the district courts review social security appeals on the administrative record, without taking new evidence."); Aldea v. Astrue, 828 F. Supp. 2d 396, 401 (D. Mass. 2011) ("It is well-settled that an administrative law judge is not permitted to rely on evidence

14

outside the record."); see also Nelson v. Apfel, 131 F.3d 1228, 1236-37 (7th Cir. 1997) (concluding that, in reaching disability determination, ALJ improperly considered observations that he made of claimant at hearing conducted immediately after claimant's hearing).

In sum, none of the grounds raised by Newman warrants reversal or remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the Acting Commissioner's motion to affirm (doc. no. 8) is granted, and Newman's motion to reverse (doc. no. 6) is denied. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 15, 2018

cc: Counsel of Record